IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANKURA CONSULTING GROUP, LLP,<br>485 Lexington Avenue<br>New York, New York 10017<br><br>    Movant,<br><br>v.<br><br>MCDERMOTT WILL & SCHULTE LLP,<br>500 North Capitol Street, N.W.<br>Washington, DC 20001<br><br>    Respondent/Non-Party. | Case: 1:26-mc-00031<br>Assigned To : Friedrich, Dabney L.<br>Assign. Date : 3/10/2026<br>Description: Misc.<br><br>Case No. 3:24-cv-00179-HEH |

## ANKURA CONSULTING GROUP, LLC'S MOTION TO COMPEL PRODUCTION OF NOTES PREPARED BY JULIE MCCONNELL

Defendant Ankura Consulting Group, LLC ("Defendant"), by counsel and pursuant to Rule 37 of the Federal Rules of Civil Procedure and the Local Rules of this Court, hereby moves to compel Ms. McConnell and her law firm, McDermott Will and Schulte ("MWS"), to produce the notes Ms. McConnell prepared and later relied upon to draft the affidavit of third-party Byron Nickens, subject to *in camera* review to exclude any attorney work product.

In support of this motion, Defendant relies upon and incorporates herein the arguments and authorities set forth in its accompanying memorandum in support, and for the reasons set forth therein, the Court should compel production of the subject notes prepared by Ms. McConnell.

Pursuant to Fed. R. Civ. P. 37(a)(1), Defendant certifies that the parties have conferred in good faith in an effort to resolve the subject matter of this motion without the Court's intervention. Further the Special Master conducted a hearing on March 7, 2026, regarding subject matter related



**RECEIVED**

MAR 1 0 2026

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

to this motion at which counsel for the parties, as well as counsel for Ms. McConnell and MWS, appeared and participated.

Given the current status of discovery and the deadline for completion thereof, Defendant respectfully requests that the Court refer this motion to the Special Master for consideration on an expedited basis.

WHEREFORE, Defendant respectfully requests that the Court grant this motion on an expedited basis, enter an order compelling production of the subject documents for *in camera* review, and grant such other and further relief as the Court finds proper.

Date: March 9, 2025

Respectfully submitted,

ANKURA CONSULTING GROUP, LLC

By Counsel

_____

Guy Brenner
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, N.W.
Suite 600 South
Washington, DC 20004
Tel.: (202) 416-6800
Fax: (202) 416-6899
Email: gbrenner@proskauer.com

Steven J. Pearlman
Brenna R. McLean
PROSKAUER ROSE LLP
70 West Madison, Suite 3800
Chicago, Illinois 60602
Tel.: (312) 962-3545
Fax: (312) 962-3551
Email: spearlman@proskauer.com

Mark W. Batten
PROSKAUER ROSE LLP
One International Place

Boston, Massachusetts 02110
Tel.: (617) 526-9850
Fax: (617) 526-9899
Email: mbatten@proskauer.com

P. Kramer Rice
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Tel.: (212) 969-3406
Fax: (212) 969-2900
Email: krice@proskauer.com

*Counsel for Ankura Consulting Group, LLC*

James C. Cosby
J. Brandon Sieg
Elizabeth Scott Turner
O'HAGAN MEYER
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Tel.: (804) 403-7132
Fax: (804) 403-7110
Email: jcosby@ohaganmeyer.com
Email: bsieg@ohaganmeyer.com
Email: eturner@ohaganmeyer.com

*Counsel for Ankura Consulting Group, LLC*

John M. Erbach
SPOTTSFAIN, P.C.
411 E. Franklin Street, Suite 600 Richmond, VA 23219
Tel: (804) 697-2044
Fax: (804) 697-2144
Email: jerbach@spottsfain.com

*Counsel for Ankura Consulting Group, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANKURA CONSULTING GROUP, LLC,<br>485 Lexington Avenue<br>New York, New York 10017<br><br>   Movant,<br><br>v.<br><br>MCDERMOTT WILL & SCHULTE LLP,<br>500 North Capitol Street, N.W.<br>Washington, DC 20001<br><br>   Respondent/Non-Party. | Civil Action No. _____ |

## ANKURA CONSULTING GROUP, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF NOTES PREPARED BY JULIE MCCONNELL

BDO USA, Inc. ("BDO") claims that Ankura Consulting Group, LLC ("Ankura" or "Defendant") and its CEO Kevin Lavin colluded to "steal" BDO's Healthcare Transaction Advisory Services ("Healthcare TAS") practice by working with Mr. Phan to solicit eight BDO employees and unidentified clients to follow him to Ankura in violation of his employment agreement with, and fiduciary duties to, BDO. At the summary judgment stage, BDO intends to rely on the affidavit of Byron Nickens—a former BDO employee and member of Phan's Healthcare TAS team—which it attached to its First Amended Complaint wherein it added Mr. Lavin as a defendant and first asserted its claim of civil conspiracy.

This affidavit, drafted by former McDermott Will and Schulte ("MWS") attorney Julie McConnell, contains specific and detailed statements that are alleged to have been made by Mr. Lavin and Mr. Phan in which they purportedly set forth Ankura's intentions. However, at his deposition, Mr. Nickens testified that Mr. Lavin and Mr. Phan had not, in fact, uttered the

statements as they appear in his affidavit. Ms. McConnell drafted and prepared the affidavit, based on conversations with Nickens. BDO represented for the first time last week that Ms. McConnell never spoke directly to Mr. Nickens (aside from the recorded Zoom session on March 7, 2024). (ECF No. 273 at 2, n.1.) However, the testimonies of Mr. Nickens and of his counsel, Laura Mallory, Esq., contradict that claim. (*See* Ex. A, Nickens Tr. 35:10-24;[1] 40:6-24;[2] 471:19-22) (Q: You told Ms. McConnell what you remembered, and she wrote what you had told her; correct? A: Yes."); (Ex. B, Mallory Tr. 28:12-21.[3]))

Given the contradiction between the content of the affidavit and Mr. Nickens' testimony of his conversation with Ms. McConnell, Defendant subpoenaed Ms. McConnell's former firm for her notes taken during her conversations with Mr. Nickens and sought to depose Ms. McConnell for her testimony regarding her investigation that formed the basis of Mr. Nickens' affidavit. (*See* Ex. C. and D, September 10, 2025 Subpoena *Duces Tecum* issued to McDermott, Will & Schulte and February 17, 2026 Subpoena *Ad Testificandum* to Julie McConnell.) The Special Master conducted a hearing on March 7, 2026, concerning pending motions to quash Ankura's subpoena *ad testificandum* to Ms. McConnell. (ECF Nos. 264, 265.) At the hearing, among other topics, the

---

[1] "Q: Let's start over. In total, how many times have you had communications with counsel for BDO? A: So there were two on the confidential information, and I believe there were one or two calls to discuss the Settlement Agreement and the information that I presented in my affidavit." (Ex. A, Nickens Tr. 35:10-16.)

[2] "They asked about my recollection of events that led up to me leaving BDO, when I was brought the opportunity to potentially have employment at Ankura, and the sequence of events that occurred from -- around December 21st through December 23rd of 2024 -- or sorry -- 2023, the conversations that I had with then Mr. Lavin, then also discussed the email that listed out my offer of employment that had the base salary per share bonus, and then also I provided my address via text message to Mr. Lavin." (Ex. A, Nickens Tr. 40:8-18.)

[3] "I recall a conversation, with Ms. McConnell and Mr. Nickens there, in which questions were asked and Mr. Nickens answered them. And ultimately an affidavit was drafted based on that conversation." (Ex. B, Mallory Tr. 28:17-20.)

parties discussed the component of the subpoena seeking production of Ms. McConnell's notes of her conversations with Mr. Nickens related to the preparation of Mr. Nickens' affidavit. In opposing that aspect of the subpoena, counsel for Ms. McConnell took the position that the notes would be subject to a motion to compel, if Defendant were to file such a motion, on March 9, 2026. Passing the point that a separate motion to compel should not be required when the notes are already subject to the pending subpoena, in order to avoid any procedural wrangling, Defendant hereby moves to compel production of Ms. McConnell's notes of her conversations with Nickens.

Defendant seeks only the non-privileged facts relayed to Ms. McConnell by Mr. Nickens as recorded in her notes, which are subject to discovery, especially now that other sources of that information have been exhausted. If the notes reflect inconsistencies between what was conveyed to Ms. McConnell and what ultimately appeared in the affidavit that Mr. Nickens ultimately agreed to sign, that would constitute critical and material evidence that Defendant could and would use to further impeach Mr. Nickens. If the notes reflect that Mr. Nicken's' deposition testimony is accurate, then the notes can be used to undermine the veracity of the affidavit. The substance of the conversations between Mr. Nickens and Ms. McConnell which resulted in the affidavit are at the crux of BDO's allegations. To ensure that any mental impressions of counsel are not disclosed, the Court or Special Master can conduct an *in camera* review of the notes and direct redaction of any such material. But there is no prejudice to any party from the disclosure of the facts, and thus Defendant's motion should be granted.

## FACTUAL BACKGROUND

Mr. Nickens, a former colleague of Mr. Phan and others at BDO who chose to join Ankura in January 2024, did not come to Ankura, but instead left BDO for another firm. As he left, Mr. Nickens set up an account with an online repository called ShareFile, and transferred to it several

hundred documents that he had through his employment at BDO. After BDO contacted him about those documents, Mr. Nickens retained counsel (Laura Mallory of Maynard Nexsen). Deeply concerned, as he later testified, about the significant liability he potentially faced as a result of taking the documents, Mr. Nickens agreed to give BDO an affidavit describing his alleged conversations with Mr. Phan, Ankura CEO Mr. Lavin, and others. As Ms. Mallory and Mr. Nickens subsequently testified, Mr. Nickens offered the affidavit in exchange for a release because it was the only thing of value he could offer to stave off threatened litigation and "ruinous" liability.

Mr. Nickens did not draft the affidavit, however, and neither did Ms. Mallory. Instead, Ms. McConnell spoke with Nickens and then prepared the affidavit herself based on those conversations. As has been recounted in existing briefing, Nickens acknowledged in his deposition that certain statements attributed to Mr. Lavin, Mr. Phan, and others were not actually made by them. At the same time, Mr. Nickens has not disavowed his affidavit expressly and continues to stand by the "gist" of the allegations contained therein. (*See* Ex. A, Nickens Tr. 470:25-471:3.)

Seeking to determine the truth of the matter, Defendant initially served a deposition subpoena on Ms. McConnell, and a subpoena *duces tecum* on her firm, on September 10, 2025. When BDO objected, Defendant agreed to seek the information they needed from other sources first. Defendants deposed Mr. Nickens, and subsequently deposed Ms. Mallory.

After these depositions were taken, with testimony from Mr. Nickens about inaccuracies in the affidavit and Ms. Mallory testifying to a complete lack of memory about the information Mr. Nickens provided to Ms. McConnell again sought the deposition of Ms. McConnell, the only other party to the discussions. In meet and confer sessions over the renewed request, Defendant confirmed that they were not seeking the disclosure of privileged information from Ms. McConnell, but that Ms. McConnell was in fact witness to testimony that is central to BDO's

claims. The parties could not reach agreement, either on the deposition of Ms. McConnell or on the production of her notes, and BDO and Ms. McConnell filed motions to quash the subpoenas. (ECF Nos. 264, 265.) Ankura opposed the motions. (ECF No. 271.)

The Court referred the dispute to the Special Master, who held a hearing on March 7, 2026. In addition to argument about Ms. McConnell's deposition, there was argument about the production of Ms. McConnell's notes of her conversation(s) that led to the affidavit. Counsel for BDO and for Ms. McConnell each commented that Ankura might seek the notes by way of a motion to compel. Accordingly, Defendant seek production of Ms. McConnell's notes through this motion.

## LEGAL STANDARD

Not "all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Federal courts recognize two types of work product: fact work product and opinion work product. *See In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir. 1994). Fact work product is discoverable "upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *United States v. Frostman*, 221 F. Supp. 3d 718, 725 (E.D. Va. 2016).

The analysis of whether an attorney's work product is "fact" or "opinion" is "inherently and necessarily fact-specific." *United States v. Clemens*, 793 F. Supp. 2d 236, 253 (D.D.C. 2011). In determining whether witness interviews are potentially discoverable fact work product, "courts look at whether the content of the memorandum has been 'sharply focused or weeded' by counsel."

*United States v. Bertie Ambulance Serv., Inc.*, 2015 WL 3932167, at *5 (E.D.N.C. June 25, 2015). "substantially verbatim" witness statements are often considered fact work product. *Id.*

## ARGUMENT

As Defendant has explained, Defendant seeks only the (alleged) facts relayed by Mr. Nickens to Ms. McConnell as recorded in her notes, not Ms. McConnell's mental impressions or other material protected from disclosure by the work product doctrine; nor does Defendant seek disclosure of any communications protected by the attorney-client privilege. So limited, then, the materials Defendant seeks are subject only to the standards of Rule 26(b)(1)—"any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *See Frostman*, 221 F. Supp. 3d at 725.

This situation is unique in that while BDO had already initiated litigation against Ankura and Mr. Phan when Ms. McConnell first spoke with Ms. Mallory and Mr. Nickens concerning his departure from BDO, Mr. Lavin was not yet a party to this case. Ms. McConnell did not initiate the conversations that later formed the basis for Nickens' affidavit because she anticipated the prospect of litigation against Mr. Lavin—she did so as part of her investigation as to determine the extent of material data Nickens took from BDO. (*See* Ex. E, Donoghue Tr. 235:8-236:1; 236:8-22.)

Moreover, if Ms. McConnell drafted the affidavit based on her notes from her discussions with Nickens as both Nickens and Mallory testified she did, and the affidavit faithfully represents what Nickens told her, then by definition her notes would not include the mental impressions of counsel but merely the facts of those conversations. *Cf. Wedekind v. McDonogh Sch., Inc.*, 2026 WL 554506, at *4 (D. Md. Feb. 27, 2026) ("substantially verbatim near-transcriptions of the questions and answers from the witness interviews" are fact work product); *U.S. v. Bertie*

*Ambulance Serv., Inc.*, 2015 WL 3932167, at *5 (similar and citing cases); *United States v. Clemens*, 793 F. Supp. 2d 236 (finding that attorneys' notes from initial interviews conducted as part of an investigation constituted "fact work product" and where therefore, "entitled to a lower standard of protection."). Given the discrepancies that Mr. Nickens has already testified to regarding his statements and what appears in the affidavit, it is even more important and reasonable that Defendant obtain discovery of the non-privileged statements Mr. Nickens provided to Ms. McConnell. To the extent those non-privileged facts of what Mr. Nickens said to Ms. McConnell reveal further inconsistencies with the affidavit, that is critical impeachment evidence that cannot be discovered in any other way, and Defendant would suffer prejudice if it is unable to pursue this line of discovery.

## CONCLUSION

For the foregoing reasons, Defendant's motion to compel should be granted, and Ms. McConnell and her law firm should be directed to produce the notes of her calls that she later relied upon to draft Nickens' affidavit – subject, should the Court direct it, to *in camera* review to exclude any attorney work product.

Date: March 9, 2025

Respectfully submitted,

ANKURA CONSULTING GROUP, LLC

By Counsel

*[signature]*

Guy Brenner
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, N.W.
Suite 600 South
Washington, DC 20004
Tel.: (202) 416-6800
Fax: (202) 416-6899
Email: gbrenner@proskauer.com

Steven J. Pearlman
Brenna R. McLean
PROSKAUER ROSE LLP
70 West Madison, Suite 3800
Chicago, Illinois 60602
Tel.: (312) 962-3545
Fax: (312) 962-3551
Email: spearlman@proskauer.com

Mark W. Batten
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110
Tel.: (617) 526-9850
Fax: (617) 526-9899
Email: mbatten@proskauer.com

P. Kramer Rice
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Tel.: (212) 969-3406
Fax: (212) 969-2900
Email: krice@proskauer.com

*Counsel for Ankura Consulting Group, LLC*

James C. Cosby
J. Brandon Sieg
Elizabeth Scott Turner

O'HAGAN MEYER
411 East Franklin Street, Suite 500
Richmond, Virginia 23219
Tel.: (804) 403-7132
Fax: (804) 403-7110
Email: jcosby@ohaganmeyer.com
Email: bsieg@ohaganmeyer.com
Email: eturner@ohaganmeyer.com

*Counsel for Ankura Consulting Group, LLC*

John M. Erbach
SPOTTSFAIN, P.C.
411 E. Franklin Street, Suite 600 Richmond,
VA 23219
Tel: (804) 697-2044
Fax: (804) 697-2144
Email: jerbach@spottsfain.com

*Counsel for Ankura Consulting Group, LLC*